UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

U.S. COURTS

MAY 0 1 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

| | |
|---|---|
| LONNIE EARL PARLOR JR., ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> Respondent, ) <br> ) <br> _____) | Crim. No. 1:18-cr-00203-BLW <br> Civil No. 1:22-cv-00434-BLW <br><br> REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

COMES NOW the Petitioner, Lonnie Earl Parlor Jr., in Pro Se, in necessity, and hereby files this reply to the Government's response to Petitioner's 28 U.S.C. § 2255 motion, pursuant to Rule 5 of the rules governing § 2255 proceedings. The Petitioner hereby avers that he stands firmly on all points raised in his initial § 2255 motion (Civ. Dkt. 1), and that the Government's response in and of itself, is tantamount to conclusive New Evidence of Ineffective Assistance of Counsel (herein after "IAC"). This reply will address points raised in the Government's response that necessitates rebuttal.

The Government's Attorney, in his contention to the merits of Petitioner's IAC claims, employs very generalized statements to what can only be construed as a shotgun approach. The Government argues that Petitioner's "motion should be dismissed because his claims are factually inaccurate," and that, "he has not met his burden of showing that Counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result." (Civ. Dkt. 8-1 at 2). The Petitioner disagrees. As mentioned above, and pertinent here, the Government's response serves as an unconditional stipulation that former Court Appointed Counsel

(1)

, L. Craig Atkinson, was in fact Constitutionally Ineffective. In sworn affidavit to the Court, submitted as Exhibit 1 of Government's response, "Declaration of Attorney L. Craig Atkinson" (Civ. Dkt. 8-1), Mr. Atkinson effectively admits to several of the Petitioner's claims of IAC. More importantly, he perjured himself in attempt to mislead the Court. In his affidavit, paragraph 4, at 2, Mr. Atkinson duplicitously states: "this argument was first presented by the Court at the sentencing hearing," further stating, that "if I had known that the Court was going to rest its case on that fact, I certainly would have objected to that fact." The issue/argument that Mr. Atkinson was referring to was CI's alleged "trading drugs for guns" statements being used as a basis for the application of four-level enhancement to Petitioner's Base Offense Level, under 2K2.1 (b)(6)(B) cmt. 14(B)(ii). Mr. Atkinson attests in his affidavit that he had no knowledge of this issue until it was brought up by the Court on 11/19/2019 at Petitioner's sentencing hearing. However, contrary to what Mr. Atkinson asserts, the Court record evidences otherwise. More specifically, according to the CRIMINAL DOCKET SHEET for Case No. 1:18-cr-00203-BLW, on 10/30/2019, the Presentence Report (herein after "PSR")(Crim. Dkt. 53) and the Addendum to PSR (Crim. Dkt. 53-1), was filed in the Court, to wit; all parties, including Defense Counsel, were electronically notified of these documents having been filed, via CM/ECF system. The PSR and its Addendum properly alerted all parties that the Probation Officer had considered the Petitioner's Objections to PSR and rejected them, and that all three enhancements were being applied. The Addendum, paragraph 8, at 2, unambiguously stated that the CI's alleged trading drugs for guns statements were indeed being used for application of 2K2.1 (b)(6)(B)'s four-level enhancement. In relevant part, Addendum stated:

> "Considering the specific objection to the increase pursuant to § 2K2.1 (b)(6), the defendant traded drugs for a firearm. Additionally, other firearms

(2)

> were located along with 21.63 grams of marijuana,
> $5,000 in cash, plastic baggies, and two digital
> scales. These itmes are consistent with drug
> trafficking acitvities. Absent direction from
> the Court, the presentence report has not been
> amended. (Crim. Dkt. 53-1, Addendum, ¶8 at 2).

These documents were enter/filed twenty-one (21) days before Petitioner's sentencing hearing on 11/19/2019. Mr. Atkinson file the Petitioner's Sentencing Memorandum (Crim. Dkt. 55) on 11/12/2019. Did defense counsel review the PSR and Addendum before filing Petitioner's Sentencing Memorandum? The answer here would have to be "NO" for Mr. Atkinson to properly support his declaration of having no knowledge [prior] to 11/19/2019, of the Court's intention to use CI's alleged hearsay statements as basis for four-level (Drug Trafficking) enhancement. Mr. Atkinson cannot escape culpability of his deficient performance and ineffective assistance here, it is evident from the record that he most assuredly had proper notice of the Court's intentions regarding CI's alleged statements. Mr. Atkinson simply chose not to take any appropriate action in defense of the Petitioner...or at the very least, failed to competently interpret the Probation Officer's decision(s), and the serious ramifications thereof. In any event, Mr. Atkinson surely was aware of the issue [be]fore the sentencing hearing [and] before drafting/filing Petitioner's Sentencing Memorandum -- and did nothing to counter and/or contest the CI's alleged "unsupported" hearsay being used to enhance his client's sentence. Subsequently, the four-level enhancement under USSG § 2K2.1 (b)(6)(B) cmt. 14(B)(ii) was indeed applied to Petitioner's base offense level and his sentence was wrongly made longer.

Mr. Atkinson does acknowledge the fact that the "Petioner has maintained from the beginning of his representation of him that he indeed had not traded guns for drugs with anyone," (Civ. Dkt. 8-1, ¶4 at 2; ¶8 at 3). This fact alone was reason enough for defense counsel to investigate into CI's alleged hearsay statements

said to have been made against the Petitioner. Also under such circumstances as they were, Mr. Atkinson should have conducted a background check into CI's identity, history, and motive(s). Moreover, it was "his duty to make a reasonable investigation or to make reasonable decision that makes particular invetigation unnecessary." (Strickland v. Washington, 466 U.S. at 691 (1984). There is nothing in the record, Petitioner's case/work file, or moving papers that indicate Mr. Atkinson conducted any investigation in to CI whatsoever. This was unreasonable..defense counsel himself believed the CI had lied and was not credible; at sentencing, stating to the court: "...which I argue is not a reliable source herself." (Sent. Hr'g. Transcript, p. 20, line 20). Why then did defense counsel not ivestigate the CI? There was no strategy or tactical advantage in Mr. Atkinson's choice to not investigate, his conduct under the circumstances accordingly fell short of professionally competent representation and constitutes deficient performance under Strickland. It was not sound professional judgment. However, Mr. Atkinson proffers in his affidavit that, "at the time of preparing for trial it was not necessary to know the identity of the CI since the Petitioner was not being charged for the drug transactions, or for the firearms that were allegedly apart of those transactions." (Civ. Dkt. 8-1, ¶4 at 2). Furthermore, the Government improperly boasts that, "Mr. Atkinson rightly concluded that the previous statements made by the CI were not important to the case because Petitioner was not being charged with the previous guns or drug transactions." (Civ. Dkt. 8, at 11). Contrary to the Government's and Mr. Atkinson's contention, the identity and background of the CI was absolutely imperative at the time, CI was the [sole] government witness, who could have been called to take the stand to testify against the Petitioner in this case. Was possible impeachment of CI never a defense? A defense attorney's failure to consider alternate defenses constitutes deficient performance when the attorney "neither conducts a reasonable investigation nor makes

(4)

a showing of strategic reasons for failing to do so." (Sanders, 21 F.3d at 1456; see also Phillips v. Woodford, 267 F.3d 966, 980 (9th Cir. 2001). It is worth noting that both the Government and Mr. Atkinson represent that "No written statements, or video or audio recordings were received of the CI" (Civ. Dkt. 8 at 11; Civ. Dkt. 8-1, ¶4 at 2); and yet, after being properly notified by the Addendum that these non-existent alleged statements were indeed material to the Petitioner's sentence, Mr. Atkinson did nothing to defend or protect his client's liberites and/or interests. "Failure to investigate or adequately prepare for sentencing may render counsel ineffective." (Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)).

Mr. Atkinson was ineffective in his conclusion that the preponderance of evidence standard applies to Petitioner's case and should be reviewed under this standard..."the standard of proof applicable to relevant conduct (enhancements) determinations under the advisory guidelines is preponderance of evidence." (Crim. Dkt. 52, at 7, Objection to /Response to Presentence Report). Taking into account, the extremely disproportionate impact that the three (3) applied enhancements, 2K2.1 (b)(1)(A) [+2], 2K2.2 (b)(4)(A) [+2], and 2K2.1 (b)(6)(B) [+4], had on the Petitioner's sentence, defense counsel rightfully should have argued for "clear and convincing" standard. In attempt to justify and excuse his ineffectiveness on this point, Mr. Atkinson has woven a material ommission in with a misconstruction of applied law. In his affidavit he asserts: "the case law where clear and convincing evidence standard has applied have been applied where 'one enhancement or factor' disproportionately afftected the sentence." (Civ. Dkt. 8-1, ¶11 at 4); clearly implying that when there is more than one enhancement and/or factor affecting a sentence in aggregate, that the clear and convincing standard does not apply. This is not true. There is established law on this issue and has been continously

(5)

practiced here in the Ninth Circuit district courts. In United States v. Riley, 335 F. 3d 919 (9th Cir. 2003), the court emphasizes that when "the combinied impact of contested sentencing enhancements is disproportionate relative to the offense of conviction, the district court must apply the clear and convincing evidence standard of proof." (citing Jordan, 256 F.3d at 927, 929). See also United States v. Holmes, 39 Fed. Appx; 2002 U.S. App. LEXIS 7639 (9th cir. 2002) ("Where as here, a defendant challenges multiple sentencing enhancements, we consider their impact in the aggregate rather than individually.")(quoting Jordan, 256 F.3d 922, 926 (9th Cir. 2001)); "Where a defendant has been subjected to at least a seven-level enhancement which more than doubled the intially applicable guideline range, this Court has consistently required determinaiton of those enhancments by clear and convincing evidence". See Jordan, 256 F.3d at 929; United States v. Munoz, 233 F.3d 1117, 1127 (9th Cir. 2000); United States v. Hopper, 177 F.3d 824, 833 (9th Cir. 1999); United States v. Jordan, 256 F.3d 922 (9th Cir. 2001). The two case law citations presented in the Government's response on this issue lend more support to the Petitoner's position than it does to the Government. Nonetheless, Mr. Atkinson's assertion was misplaced on the "higher standard of proof" being applied. In turn, the Petitioner suffered unwarranted increase in sentence. Without these enhancements, Petitioner faced a sentencing range of 57-71 months -- reflecting a criminal history Category IV and a base offense level of 21. The eight-level ehancement resulted in a 121-151 month guidelines range, but Petitoner's statutory maximum for 922 (g)(1) was 120 months. Due to Mr. Atkinson's inadequate and deficient representation here, Petitioner was sentenced unreasonably to the statutory maximum 120 months of imprisonment.

It was unreasonable for Mr. Atkinson to not accept the Court's offer to continue Petitioner's sentencing proceedings and to hold an evidentiary hearing

[out of an abundance of caution] to establish the CI's credibility and to verify the veracity of hearsay statements allegedly made. (Sentencing Hearing Transcript, p. 24, line 15-16; p.25, line 8-9). This was not sound professional judgment. Mr. Atkinson, under the facts and circumstances of the case, and specifically in that instant should have certainly accepted the offer/suggestion. It was completely unreasonable for him to pass up the opportunity to cross-examine the CI and probe the veracity of her alleged statements and accusation(s). No reasonable strategy or tactical decision supports counsel's action on this point...nor does he offer one either. Petitioner brings to the Court's attention that, in Mr. Atkinson's Declaration (Civ. Dkt. 8-1) , paragraph 6 at 3, responding to Pettitioner's IAC claim on this issue; Mr. Atkinson never actually answers to or denies Petitioner's IAC claim, he simply recounts essentially what the Court did. Petitioner construes Mr. Atkinson's silence on the issue as his acquiescence and respectfully ask the Court now to do so as well.

The Petitoner has to the best of his ability particularized former Court appointed Trial Counsel, L. Craig Atkinson's deficient performance and ineffective assistance of counsel. Petitoner has made colorable claims that trial counsel's performance was objectively unreasonable and that the facts necessary to resolve these issues are fairly in dispute. In the present state, the record does not sufficiently support the Government's argument that Mr. Atkinson made rational informed strategic choices, to wit: not functioning as the counsel guaranteed the defendant by the Sixth Amendment. The court has before it the entire record and can rely on its own recollection indeed, TO WIT; Viewing the entire colloquy between Court appointed Trail Counsel, L. Craig Atkinson and the Court (Crim. Dkt. 57, pages 13-17, Sentencing Hearing Transcript) in proper context, it underscores Mr. Atkinson's lack of preparedness and reveals that the state court itself deemed

(7)

counsel's performance deficient, even though it did not explicitly so state.

Significant Procedural Error

The Petitoner contends that the district court erred in concluding that his 2013 prior conviction for Aggravated Battery, Case No. CR-FE-2013-9024, in violation of Idaho Code § 18-903 and § 18-907, is a categorical crime of violence for the purposes of 2K2.1 (a). The district court failed to properly calculate Petitioner's sentencing Guidelines range. The Supreme Court has made it clear that the district must correctly calculate the recommended Guidelines sentence and use the recommendation as the "starting point and initial benchmark." Kimbrough v. United States, 552 U.S. 85, 108, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007); see Gall, 552 U.S. 38, 49, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)(holding that improperly calculating the Guidelines range constitutes "significant procedural error"); United States v. Munoz-Camarena, 631 F.3d 1028, 1030 (9th Cir. 2011)(holding that a "mistake calculating the recommended guidelines sentencing range is a significant procedural error that requires us to remand for resentnecing).

Aggravated Battery under Idaho Code (herein after "IC") § 18-907 cannot be committed without first committing the bedrock principal offense of "Battery", IC § 18-903 simultaneously in that same instant. Therein, it can only be concluded that the two offenses indeed share the same element(s) necessary for a conviction. There are no altenative elements whcih create seperate crimes. The Petitioner's 2013 Aggravated Battery thus, is indivisible. "If a statute does not list alternative elements, but merely encompasses different means of committing an offense, the statute is 'indivisible' and the modified categorical approach 'has no role to play'". Lopez-Valencia v. Lynch, 798 F.3d 863, 868, 868 (9th Cir. 2015)(quoting Descamps, 570 U.S. at 264). Idaho's Aggravated Battery, § 18-903 and § 18-907, criminalizes more conduct than the federal generic offense does. To be guilty of battery under Idaho

Code §18-903 does not require a showing that the accused purposely caused injury. Billings, 54 P.3d at 473. "Although it is not necessary that the defendant know the act is illegal or intend that it cause bodily injury, it is necessary that the defendant intend a forceful or violent contact with the other person."(emphasis added)(citing Idaho Code § 19-903(a)). Moreover, the culpable state of mind for a violation of Idaho Code § 18-903(b) is intent to touch or strike another person, and not intent to cause bodily injury or harm. Billings, 54 P. 3d at 473. See also White v. Univ. of Idaho, 118 Idaho 400, 797 P.2d 108, 109 (Idaho 1990)(affirming lower court ruling that "under Idaho law the intent required for the commission of a battery is simply the intent to cause an unpermitted contact and not an intent that the contact be harmful or offensive."); State v. Macias, 129 P.3d at 1260-61 illustrates, battery in Idaho can instead be accomplished by willfully using force, or by intentionally striking the victim-an intent to cause harm is not required.

The federal definition of "crime of violence" under the elements clause of § 4B1.2(a)(1) is defined as: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" In interpreting this language, the Supreme Court has defined "physical force" to mean "violent force-that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L. Ed. 2d 1 (2010)(emphasis in original)(citation ommitted). Clarifyng this definition , the Supreme Court later explained that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense comtemplated by Johnson." Stokeling v. United States, 139 S. Ct. 544, 553, 202 L. Ed. 512 (2019). In addition, the Supreme Court has held the use of force must be intentional, requiring "active employment" and a "higher degree of intent than negligent or

merely accidental conduct." Leocal v. Ashcroft, 543 U.S. 1, 9, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004). "The bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1132 (9th Cir. 2006). Relevant here, under the categorical approach, when "determining the meaning or scope of the crime of conviction, the federal courts are bound by the state courts' interpretations of state criminal statutes." United States v. Flores-Cordero, 723 1085, 1087 (9th Cir. 2013)(citing Johnson, 559 U.S. at 140). As case law illustrates, Idaho Code § 18-903 punishes crime not encompassed under 4B1.2(a)(1) and is thus categorically overbroad. United States v. Vega, 2022 U.S. Dist. LEXIS 51503 (D. Idaho, Mar. 18, 2022). The Honorable Judge David C. Nye ruled in Vega, that "because Idaho battery is an offense that set forth alternative means of establishing the offense for which the jury need not agree, the statute is not divisible and the modified categorical approach is inapplicable.

Petitioner's 2013 Aggravated Battery being improperly used in the calculation and determination of his sentence was not harmless, in result, Petitioner's Criminal History points and Base Offense Level were wrongly increased, to wit; wrong initial Guidelines range was reached: 77-96 months, based on 24 offense level points and 9 criminal history points (Category IV). Had the Petitioner's sentencing guidelines range been correctly calculated, less the 2013 Aggravated Battery, he would have appropriately scored 20 offense level points and 6 criminal history points (Category III) making his guidelines range 41-51 months ... 36-45 month difference of more prison time. This before the application of eight-level enhancement in question and 3 point variance for Petitioner's Acceptance of Responsibility. Clearly, the Petitioner was prejudiced and his substantial right affected by the unjust increase of his sentence. In Glover v. United States, 531 U.S. 198, 203-04, 121 S. Ct. 696,

(10)

148 L. Ed. 2d 604 (2001), Supreme Court decided that..."[A]ny amount of actual jail time has Sixth Amendment significance." Such is the case here.

The Petitioner did not raise this particular issue on driect appeal because his Court appointed Appellate Counsel, Craig H. Durham, advised him that this was "more suited for a 2255--for instance; Atkinson didn't object to using your priors", ( See Exhibit 1, TRULINCS Email Correspondence, dated 3/11/2020). Petitioner places this evidence before the court now to show good "cause" for not raising this claim sooner. The Petitioner prays that the Court will not sacrifice his Due Process right for blindly putting confidence into his Appellate Counsel's professional advice and decision(s); and take this claim into it's considerations as an exception to the procedural default rule under Bousley v. United States, 523 U.S. 614, 622, (1998); Ratigan, 351 F.3d at 960.

Lastly, the Petitioner brings before the Court now what he asserts is a unique situation under the circumstances and mandates that his 120 month sentence be vacated and remanded, and that he be brought back before the Court to resentenced under the correct sentencing guidelines range of 84-105 months.

As a result of presidential pardon, the Petitioner's "simple possession of 21.63 grams of Marijuana" that was used as basis for application of the four-level enhancement under USSG § 2K2.1 (b)(6)(B) cmt. 14(B)(ii), for Felony Drug Trafficking, can no longer stand to Constitutionally uphold the enhancement in the Petitioner's case.

> In relevant part, President Biden's October 6, 2022 Proclamation:
>
>> ..."granted a full, complete, and unconditional pardon to (1) all United States citizens and lawful permanent residents who committed the offense of simple possession of marijuana in violation of 21 U.S.C. § 844 on or before October 6, 2022, regardless to whether such persons had been charged with or prosecuted for the offense on or before the date of such proclamation;"...

Pertinent here, are the facts that: 1) The misdemeanor simple possesion of 21.63 grams of Marijuana used for the application of 2K2.1 (b)(6)(B)'s four-level enhancement, more specifically. Case No. CR01-18-34128, was dismissed on February 18, 2020, by the Honorable Judge Thomas P. Watkins, in the Ada County Magistrate Court, in Boise Idaho. (See Exhibit 2); and 2) The Petitioner was not charged, indicted, or convicted federally for ANY violation of the Controlled Substance Act (herein after "CSA") as currently codified at 21 U.S.C. § 844, and as previously codified elsewhere in the United States Code. In light of these facts, and in conjunction with President Biden s October 6, 2022 Proclamation Granting Pardon for the Simple Possession of Marijuana, the continued application of USSG § 2K2.1 (b)(6)(B) cmt. 14(B)(ii) to the Petitioner's sentence would be further violation of his Due Process rights and indeed a continuing miscarriage of justice. Petitioner brings to the Court's attention that this issue was not availble to him at the time he submitted his initial § 2255 motion on October 3, 2022. President Biden's Proclamation went into effect just a few days after.

Petitioner is not charged with any offense under CSA § 844, including "Simple Possession of Marijuana" but as it currently stands, he is being punished under 2K2.1 (b)(6)(B) as if he were convicted of some federal marijuana offense. He is not and even he were, it would be "simple possession" to which the President pardoned him for. Simply said: There is no marijuana (or any other drug or narcotic) to lend support to 2K2.1 (b)(6)(B) cmt. 14(B)(ii)'s 4-level enhancement...Petitioner's sentence must be vacated and remanded for resentencing without USSG § 2K2.1 (b)(6)(B) enhancement.

> ("A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt...if granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction

(12)

from attaching...")(See Ex parte Garland, 71 U.S. 333, 380, 18 L. Ed. 366 (1866)

In conclusion, the Petitioner hereby avers that he has particularized his § 2255 claims, inter alia, to the best of his ability, and has effectively identified factual disputes with respect to those claims based on the true facts and evidence of his case. Therefore the motions, files, and records in this case do not show conclusively that the Petitioner, Lonnie Earl Parlor Jr., is not entitled to any relief on his claims of Ineffective Assistance of Trial/Appellate Counsel, Abuse of Discretion by the Court, and Significant Procedural Error.

WHEREFORE NOW, based on the facts detailed in the 28 U.S.C. § 2255 and this Reply to Government's Response to Petitioner's § 2255 Motion, and its supporting attachments, the Petitioner, Lonnie Earl Parlor Jr., respecfully moves this Court to promptly schedule this case for an evidentiary hearing to resolve the disputed facts; issue a Writ of Habeas Corpus to have the Petitioner brought before it to the end that he may be resentenced under the correct United States Sentencing Guidelines range; and appoint Pettioner Counsel.

Dated the 14th day of April, 2023.

Respectfully submitted,

*[signature]*

Lonnie Earl Parlor Jr.
Reg. No. 19577-023
Lompoc United States Penitentiary
3901 Klein Blvd.
Lompoc, CA 93436

U.S. COURTS

MAY 0 1 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

*** CERTIFICATE OF SERVICE ***

I, the undersigned, do hereby certify that I have served a copy of this motion upon the Clerk of the Court, via U.S. Mail, propperly addressed.

Counsel for the Government is a registered participant in the CM/ECF system, and will receive an electronic notification as to the filing of this document, when the document is filed.

Done this 14th Day of April, 2023.

Respectfully submitted,

Lonnie Earl Parlor Jr
Reg. No. 19577-023
Lompoc United States Penitentiary
3901 Klein Blvd.
Lompoc, CA 93436

EXHIBIT 1

TRULINCS 19577023 - PARLOR, LONNIE EARL JR - Unit: LUM-L-A

---

FROM: 19577023
TO: Durham, Craig
SUBJECT: RE: RE: Grounds
DATE: 03/11/2020 07:55:49 PM

U.S. COURTS

MAY 0 1 2023

Rcvd_____ Filed_____ Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

Okay, next week then. I'm not sure if I'm suppose to get at him about setting up the call, like before or whether you're suppose to call him. From what I am told he won't be back until this Sunday. Maybe you can give him a call and leave a voicemail or something...but I will surely be on his bumper about it on Sunday or the very next time that I see him. Oh there is one more piece of mail that I shot out the next day after that you just got (somehow got left out of envelope). In any event, am looking forward to talking with you. Have a "prosecutor" question for ya. So until then, have a good rest of the week and holler at cha later. Let me know if I do in fact have to chase down my counselor again. Thanks.
-----Durham, Craig on 3/11/2020 4:06 PM wrote:

>

Hey Lonnie:

I got your papers listing possible issues in the case. Thanks for sending them; it's very helpful.

I've also started primarily work on the brief - I believe the best issue is going to be on attacking the 4-level enhancement for possession "in connection with another felony offense." In addition to that, I think we argue that the judge erred in saying that Atkinson waived an objection to the CI's statement. We can also put in there that the prosecutor misstated the facts about an alleged deal the day before the controlled buy of guns.

On the other hand, I don't think appealing the lack of a suppression hearing is really going to go very far. That's more of an ineffective assistance of counsel claim in a 2255 (habeas) for not filing a motion to suppress in a timely manner before you pled guilty.

Many of the other things you list are good ideas but some also seem more suited for a 2255 - for instance; Atkinson didn't object to using your priors, but honestly those probably only would matter if you were watched up to an Armed Career Criminal or a Career Offender, which you weren't. \

In any case - let's have a phone call next week (week of 3/16). I'm fairly open, so whatever works with you or your case manager.

LONNIE EARL JR PARLOR on 2/26/2020 10:07:55 AM wrote
Okay cool. I'll be shooting you a piece of mail next week. Have a good week.
-----Durham, Craig on 2/25/2020 2:51 PM wrote:

>

Lonnie: Just a heads up that the brief due date has been continued to March 23, as expected. Let's talk again in a few weeks.
Craig

LONNIE EARL JR PARLOR on 2/17/2020 4:05:17 PM wrote
"Bartering", they do love to use that term without evidence or any support lol. Okay thanks alot Craig. I'll check it out. Hope your President's Day is going good though. I'll be getting back at you soon.
-----Durham, Craig on 2/17/2020 11:06 AM wrote:

>

Hey Lonnie: It was good to talk to you the other day. A couple of quick updates. First, I cannot find the case "Wendt v. United States" that involves bartering of drugs for guns. But there is a 2nd circuit case called "United States v. Wint" that DOES involve that issue. Not sure if this is the case that the judge was citing. That case went up, was remanded, and came back up again. It's citation is: United States v. Wint, 97 Fed.Appx. 352 (2d Cir. 2004); United States v. Wint, 261 Fed. Appx. 340, 342 (2d Cir. 2008).

This is what is says: "The district court, however, increased the Guidelines level under United States Sentencing Guidelines section 2K2.1(b)(5) (2000), which provided for a four-level increase "[i]f the defendant used or possessed any firearm or